[Cite as *State v. Davis*, 2022-Ohio-3921.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111365 |
| v. | : | |
| ADAM DYAL DAVIS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 3, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652629-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee*.

Christopher M. Kelley, *for appellant*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant Adam Davis brings this appeal challenging his convictions for attempted unlawful sexual conduct with a minor, importuning, and possessing criminal tools. After a thorough review of the record and law, this court affirms.

## I. Facts and Procedural History

{¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on one count of attempted unlawful sexual conduct with a minor, a fourth-degree felony in violation of R.C. 2923.02(A); one count of importuning, a fifth-degree felony in violation of R.C. 2907.07(D)(2); and one count of possessing criminal tools, a fifth-degree felony in violation of R.C. 2923.24(A).

{¶ 3} On August 24, 2020, the Ohio Internet Crimes Against Children Task Force ("ICAC") conducted an undercover operation, "Operation Moving Target," to find individuals seeking to meet children for sexual activity. Prior to the operation going live, Detective Kristi Harvey of the Solon Police Department had created an undercover profile on the app "MeetMe" under the name "Olivia."[1] Detective Harvey listed the profile as a 29-year-old female from Solon, Ohio. The photograph used for the profile was of someone affiliated with law enforcement; however, the photograph was regressed to look like someone much younger.

{¶ 4} On August 18, 2020, Detective Harvey received a message on MeetMe from appellant. Subsequently, the following conversation took place on the application:

Appellant: You are really pretty[.]

"Olivia": Thanks! You're cute[.]

Appellant: Thanks[.]

---

[1] Detective Harvey testified she has been a police officer for 21 years and a detective for 10 years. She has worked with ICAC since 2015 and received specialized and ongoing training with ICAC.

Appellant: What are you looking for?

"Olivia": Fun[.]

Appellant: Awesome[.]

Appellant: Are you willing to meet up with someone if everyone agrees?

"Olivia": Sure — want to text me?

{¶ 5} Appellant gave "Olivia" his phone number and they began to text with each other. Just five minutes into the text conversation, "Olivia" asked "are you ok with younger girls?" Appellant responded "I actually prefer younger." Appellant told her he was 41-years-old and "Olivia" texted, "i'm [sic] younger than my profile says." Appellant asked, "How old" and "Olivia" responded "15." Seconds later, appellant texted "And you want an older guy to f*** you?"

{¶ 6} "Olivia" and appellant texted over the course of the next several days. From the point on August 18 when he learned she was only 15-years-old, until August 24, 2022, appellant sent approximately 250 text messages to "Olivia." Approximately 65 of those messages were explicit and many stated sexual acts the two could do to or for each other. There were also several text exchanges about the whereabouts of "Olivia's" parents. During the course of their conversations, "Olivia" sent additional nonpornographic pictures of herself to appellant, mainly what are commonly called selfies. Detective Harvey testified that the additional pictures that were sent were of the same person as the profile picture in the MeetMe app and were also regressed so that "Olivia" appeared to be 15-years-old.

{¶ 7} Appellant and "Olivia" made plans to meet. On August 24, 2020, appellant drove to a residential neighborhood in a Cleveland suburb to meet "Olivia." On his way to the location, "Olivia" asked him to stop and buy her a can of blueberry Red Bull. When appellant arrived, he asked "Olivia" to exit the house. Detective Harvey testified that she was texting with appellant at this time but was not at the actual meeting location. Instead, a decoy officer was in the house and the decoy officer waved at appellant to come into the house. Appellant knocked on the door and was arrested.

{¶ 8} At the police station, appellant waived his *Miranda* rights and spoke with police detectives. He told the detectives that he was in the neighborhood looking for his friend's car. He repeatedly told the detectives that he was being truthful. The interview was recorded, played for jury during trial, and entered into evidence.

{¶ 9} David Frattare, special investigator and statewide commander of ICAC, testified generally about how ICAC runs its investigations. Frattare testified regarding one type of investigation that ICAC conducts:

> Investigators would pose * * * as minor children * * * in an effort to identify offenders or those who are sharing child sexual abuse material on the internet. We may go out and proactively try and identify those targets and work up a case or an investigation at that point. * * *

> One of our efforts is to identify individuals who may be interested in traveling to meet minor children for sexual activity. "Travelers," as we call them, individuals who engage our undercover officers online believing that they're talking to minor children under the age of 16. And then those individuals travel to a physical location attempting to meet these children for sexual activity.

{¶ 10} According to Frattare, an undercover officer "won't ever bring up the topic of sexual activity first. We allow the target or the offender in every case to be the first to initiate that topic." Frattare testified that "once the topic of sex and sexual activity has been brought up, the officer will typically try and determine, you know, how serious the offender is, whether this is a fantasy or role-play, or whether it's actually a serious interest that the target has." Frattare further testified that

> some individuals remain anonymous until the very point that they knock on the front door. We have a general idea of who they are, we may not have them a hundred percent identified, but when we ask them to bring something specific like Red Bull or a bag of pretzels or something from McDonald's, and then that individual shows up at the house at the exact time with that exact item, that's further proof that then we have the individual we were talking to online.

{¶ 11} According to Frattare, "Operation Moving Target" was a four-day operation that began on August 24, 2020, and appellant was their number one target.

{¶ 12} Appellant testified that he was employed as a truck driver after serving 13 years in the army where he earned a Purple Heart after being wounded in Iraq. He testified that he suffers from post-traumatic stress due to his time being deployed. He testified that he had two prior felony convictions from a neighboring county where he was a volunteer coach and treasurer of a football league. According to appellant, he was charged with felony theft and tampering with evidence stemming from stealing approximately $18,000 from the cash drawer at the concession stand. He pleaded guilty to the charges.

{¶ 13} Appellant testified that after his convictions he sought treatment at the VA. He was very lonely, after being recently divorced and not having friends or family close by. Because of his loneliness and his isolation as a truck driver, appellant decided to join internet dating sites or apps, including "MeetMe." He denied that he ever went to a dating web site to look for a sexual relationship with an underage person.

{¶ 14} Appellant thought the picture of "Olivia" looked like "[a] younger adult woman." He could tell there were filters on her profile photo, "like a glamour filter from Snap Chat." Appellant testified that when "Olivia" told him she was 15-years-old he thought she was into role playing: "She's 29 on the website, it's an adult website. I joined an adult website you had to be 17 or older to get into. So, I'm assuming she's an adult, and this is like a role-play or a fantasy that she's wanting to play out."

{¶ 15} Appellant stated that he never pursued finding out whether "Olivia" was truly 15-years-old because he did not want her to "disappear." He testified that he was "starved for human contact" and did not have any friends.

{¶ 16} On cross-examination, appellant admitted that he was not divorced at the time he started messaging with "Olivia" and that his wife filed for divorce a week after his arrest.

{¶ 17} The jury convicted appellant of all counts. The trial court sentenced appellant to six months in prison on each count, to run concurrently. He was

classified as a Tier II sex offender by operation of law and the trial court notified him of his reporting requirements.

{¶ 18} Appellant timely appealed his sentence, assigning three assignments of error for our review:

> I. Appellant's convictions are against the manifest weight of the evidence.
>
> II. Appellant convictions are not supported by sufficient evidence.
>
> III. The trial court erred and abused its discretion by refusing to provide the jury a copy of the witness's transcript as requested.

## II. Law and Analysis

{¶ 19} We address the first two assignments of error together because they are interrelated.

### Sufficiency and Manifest Weight of the Evidence

{¶ 20} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *State v. Thompkins*, 78 Ohio St.3d 380, 367, 678 N.E.2d 541 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at

trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at *id*. Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 21} A manifest weight challenge and a sufficiency of the evidence challenge are two distinct challenges to the evidence presented. *State v. Miree*, 8th Dist. Cuyahoga No. 110749, 2022-Ohio-3664, ¶ 30, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins* at *id*. Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Harris* at *id*., quoting *Wilson* at *id*., citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all the evidence in the record, the reasonable inferences drawn from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *.'" *Harris* at *id*., quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id*., quoting *Martin* at 175.

{¶ 22} Appellant was convicted of attempted unlawful sexual conduct with a minor. R.C. 2907.04(A), unlawful sexual conduct with a minor, provides, in

pertinent part, that "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2923.02, criminal attempt, provides:

> (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
>
> (B) It is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be.

{¶ 23} Appellant was also convicted of importuning, R.C. 2907.02(D)(2):

> (D) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:
>
> (2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

{¶ 24} Finally, appellant was convicted of possessing criminal tools, R.C. 2923.24(A), which provides, that "No person shall possess or have under the

person's control any substance, device, instrument, or article, with purpose to use it criminally."

**Mens Rea**

{¶ 25} The mens rea at issue in appellant's convictions for attempted unlawful sexual conduct with a minor, importuning, and disseminating matter harmful to juveniles is knowledge or recklessness.

{¶ 26} Pursuant to R.C. 2901.22(B),

> a person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and *fails to make inquiry or acts with a conscious purpose to avoid learning the fact*.

(Emphasis added.)

{¶ 27} Pursuant to R.C. 2901.22(C),

> a person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 28} The mens rea at issue for possessing criminal tools conviction is purposeful. Pursuant to R.C. 2901.22(A),

> a person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a

prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

{¶ 29} Appellant's argument on appeal is that there is insufficient evidence to support his convictions and his convictions are against the manifest weight of the argument because the state could not show that he knew or should have known that "Olivia" was 15-years-old.

{¶ 30} Appellant does not dispute that "Olivia" sent him a text message that said she was only 15-years-old. Rather, appellant argues that he did not believe her and thought that she was acting out fantasy or role-playing, therefore, he had no knowledge of "Olivia's" purported age, nor did he act recklessly in that regard. Appellant contends that his belief that "Olivia" was a 29-year-old female, as her dating profile stated, was valid, because he had to submit a copy of his driver's license to join the app, so he assumed "Olivia" had to do the same. He argues that based on his experience with adult online dating sites, many users are into seemingly bizarre fetishes, fantasies, and or role-playing, so when "Olivia" stated she was 15-years-old, he believed it was part of some type of role play.

{¶ 31} We find that the state presented legally sufficient evidence to sustain a guilty verdict on the charged offenses. Appellant initiated a sexual conversation with "Olivia" and continued the conversation once she told him she was only 15-years-old. After a brief conversation on the app "MeetMe," appellant and "Olivia" began texting. The first text appellant sent was at 2:12 pm on August 18, 2020. Five minutes into the text conversation, at 2:17 pm, "Olivia" told appellant she was "15."

Rather than immediately terminating the conversation once "Olivia" told appellant she was a child, he replied: "And you want an older guy to f*** you?"

{¶ 32} Appellant never tried to ascertain whether "Olivia" said she was 15 as part of a fantasy or role-playing game. Instead, appellant continued to communicate with "Olivia" and sent her approximately 250 text messages. Approximately 65 of those text messages were explicit and many of the explicit text messages stated sexual acts the two could do to or for each other.

{¶ 33} Other indicators that appellant had knowledge that "Olivia" was 15-years-old include, "I'd never talk to your mom or anyone else about this," "If an adult had answered [the phone], I would have acted like a telemarketer," "what about your parents," and multiple statements about "Olivia" being at her dad's house. At one point, "Olivia" texted that if her mom found her phone, she would be "grounded." Appellant also told "Olivia" that she "wouldn't get in much trouble" if they were caught but that he "would go to jail" and "I'd literally get 10 years in prison."

{¶ 34} Whether appellant knew or acted recklessly turns on the credibility of the witnesses and evidence presented at the trial. The "trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Williams*, 2019-Ohio-794, 132 N.E.3d. 1233, ¶ 28 (8th Dist.).

{¶ 35} As to the possessing criminal tools conviction, we find that the state presented legally sufficient evidence to sustain a guilty verdict and that verdict is also not against the manifest weight of the evidence. It is undisputed that appellant used his Samsung Galaxy phone to engage in criminal conduct by exchanging

messages that were sexual in nature with an undercover law enforcement agent purporting to be 15-years-old. This evidence, if believed, is sufficient to convince the average mind that appellant purposely used his phone to engage in criminal conduct. *State v. Koran, 8th Dist. Cuyahoga No. 110923, 2022-Ohio-2410,* ¶ 52.

{¶ 36} Having reviewed the record, weighing the evidence, reviewing all reasonable inferences, and examining witness credibility, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice to warrant a new trial. The jury heard the state's evidence, as well as the state's position that appellant knew "Olivia's" age or acted recklessly in that regard. The jury also heard appellant's testimony that he thought she was 29-years-old as his explanation for his actions. This is not the exceptional case, which creates "such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 547.

{¶ 37} Accordingly, appellant's first and second assignments of error are overruled.

**Jury Question**

{¶ 38} In the third assignment of error, appellant contends that the trial court abused its discretion by refusing to provide the jury a copy of the trial transcript. Appellant claims that the jury "struggled" with the issue of whether there was sufficient evidence that appellant knew "Olivia" was 15-years-old and whether he intended to engage in sexual activity with her.

{¶ 39} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. Such an abuse "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *State v. Montgomery*, Slip Opinion No. 2022-Ohio-2211, ¶ 135, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). *See also State v. Acosta*, 8th Dist. Cuyahoga No. 111110, 2022-Ohio-3327, ¶ 43; *State v. Parker*, 8th Dist. Cuyahoga No. 110562, 2022-Ohio-377, ¶ 11.

{¶ 40} During deliberations, the jury sent a question to the trial court asking if it could see the transcript of Detective Harvey's testimony because "We have a question about how she says the female officer at the house waived the defendant in?" The trial court denied the request, writing to the jury that it must rely on its collective memory.

{¶ 41} The Ohio Supreme Court has held that "'[a]fter jurors retire to deliberate, upon request from the jury a court may, in the exercise of sound discretion, cause to be read all or part of the testimony of any witness * * *.'" *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 101, quoting *State v. Berry*, 25 Ohio St.2d 255, 267 N.E.2d 775 (1971). In *Majid*, the jury, while deliberating, asked the trial court if it could review a transcript of the testimony of a witness along with all witnesses' statements. Without objection from the state or appellant's counsel, the trial court instructed the jury to rely on their collective and individual memories of the testimony along with the exhibits accepted into evidence.

The *Majid* court found that the trial court was under no mandatory obligation to provide the requested transcript to the jury. *Id.*

{¶ 42} Likewise, here, the record does not reflect that either party objected to the court's response to the jury question. Appellant has failed to show that the trial court abused its discretion.

{¶ 43} The third assignment of error is overruled.

**Conclusion**

{¶ 44} There was sufficient evidence to support appellant's convictions for attempted unlawful sexual conduct with a minor, importuning, and possessing criminal tools and those convictions are not against the manifest weight of the evidence. Further, the trial court did not abuse its discretion in not providing the jury the trial transcript during deliberations.

{¶ 45} Judgment affirmed.

{¶ 46} It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

SEAN C. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR