[Cite as *State v. Koran*, 2022-Ohio-2410.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                           No. 110923

    v.                                 :

KIM KORAN,                              :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 14, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652696-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Fallon Radigan, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Kim Koran ("Koran") appeals his convictions of attempted unlawful sexual conduct with a minor, importuning, disseminating matter harmful to

juvenile, and possessing criminal tools. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I.    Facts and Procedural History

{¶ 2}   On August 26, 2020, law enforcement agents from the Ohio Internet Crimes Against Children Task Force ("ICAC") conducted an undercover operation targeting individuals interested in sexual activity with minors. Koran and an ICAC agent, who was posing as a young male, exchanged messages on Grindr, a social networking app geared toward males engaging in same-sex relationships. Koran and the undercover agent agreed to meet at a predetermined location to engage in sex. One of the messages the undercover agent sent to Koran stated, "im 15 that cool?" Ultimately, Koran drove to the predetermined location and was arrested on the spot.

{¶ 3}   On August 27, 2020, Koran was charged with the following offenses:

One count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02 and 2907.04(A);

One count of importuning in violation of R.C. 2907.07(D)(2);

Five counts of disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1) and;

One count of possessing criminal tools in violation of R.C. 2923.24(A).

{¶ 4}   In September 2021, Koran's case was tried to the bench, and the court found him guilty as indicted. On September 29, 2021, the court sentenced Koran to six months in prison for each count, to run concurrently. The court also determined

that Koran was a Tier II "sex offender/child offender registrant." It is from these convictions that Koran appeals.

**A. Operation Moving Target and the Grindr Messages**

{¶ 5} According to the record, the August 26, 2020 undercover investigation at issue in the case at hand was part of "Moving Target," which was "a four-day undercover operation in Newburgh Heights." ICAC worked with the Newburgh Heights Police Department and used, as the predetermined meeting spots, vacant, city-owned properties "on dead-end streets so it allows us to safely bring an individual in."

{¶ 6} It is undisputed that Koran began a conversation with Streetsboro Police Sergeant Stanley Siedlecki ("Sgt. Siedlecki"), an undercover ICAC officer who was posing as "Jay."

{¶ 7} Koran's "cell phone dump" from August 26, 2020, was admitted into evidence. Koran stipulated to the 30-page printout of all the electronic messages he sent from or received on his cell phone that day. The instant messages on Grindr at issue are between Koran, who went by the username "Fill ur GUTS" and had no photo attached to his account, and "Jay," who had a photo attached to his account of a young male of an unidentified age, are as follows:

4:22:29 Koran: Hey Jay what you got going on

4:23:44 Jay: nothing at rn u

4:24:38 Koran: Just doing s*** around the house getting ready to smoke a blunt and take a break.

[4:25:23-4:25:27 Koran sent three sexually explicit photos]

4:25:32 Koran: You looking

4:25:52 Jay: sure

4:26:05 Jay: hot pic

4:26:09 Jay: face tho?

4:26:11 Koran: I'm total top

[4:26:20-4:27:13 Koran sent three photos, one of which is sexually explicit]

4:27:34 Koran: Definitely got good d*** make you cream hard

4:29:48 Jay: hot af but prob too young for u lolol

4:31:18 Koran: Lol you mean I'm to old for you. Np enjoy, but you missing good d*** and omg do I eat a**

4:34:07 Jay: nah i trust oldr its cool wit me

4:34:08 Jay: bet

4:36:02 Koran: Well if you get bored look me up

4:39.34 Jay: im bored lol

4:41:29 Koran: Then what you got to loose but your mind. I didn't even ask are you a bottom, love taking d***

[4:41:42 Koran sent one sexually explicit photo]

4:42:15 Koran: If you got time I can beat it up good

5:06:39 Jay: ive never done anything tbh

5:26:12 Koran: Fr…maybe it would be helpful to have a daddy help guide you through this rather than someone in your Peer group. Do you know what it is you want, are you submissive or dominant? We need to hangout see if we have a good vibe or not.

5:29:58 Jay: ya i have no idea yet lol stuff sounds hot tho

5:30:03 Jay: im 15 that cool?

5:31:59 Koran:  Can I see a couple pics?  You are very handsome — FYI be careful a lot of idiots.

[5:32:12 Jay sent two photos of the young unidentified man.  One of these photos is the same photo as Jay's user profile]

5:32:50 Koran:  Cute boy — do you smoke weed, drink, party

5:34:08 Jay: ya i would fr

5:34:19 Jay: so like whats up

5:34:23 Jay: im home alone

5:34:36 Koran:  Where do you stay

5:34:59 Jay:  cle by the steelyard u

5:35:06 Jay:  steelyard commons i guess

5:36:54 Koran:  Ok you only host

5:37:09 Jay:  ya since i cant drive

{¶ 8}     After "Jay" sent the message that he "cant drive" at 5:37 p.m., Koran and "Jay" exchanged over 60 additional messages prior to Koran's arrest.  According to Koran's cell phone records, the messages between him and "Jay" were sent over a two-hour period from 4:22 p.m. to 6:21 p.m. on August 26, 2020.  Prior to 5:30 p.m., Koran was messaging ten other users on Grindr, in addition to one other person on another social media app.  From 5:30 p.m. until 6:07 p.m., Koran was engaged in a continuous electronic conversation only with "Jay"; he ceased all other texting conversations.

**B. Trial Testimony**

### 1. ICAC Commander David Frattare

{¶ 9} David Frattare ("Cmdr. Frattare") testified that he is the commander for ICAC. Frattare testified that one type of investigation that ICAC conducts is "where investigators would pose * * * as minor children * * * in an effort to identify and then arrest offenders who would travel to a physical location to engage in sexual activity with those minors."

{¶ 10} According to Cmdr. Frattare, before ICAC targets a particular suspect, certain "guidelines that were drafted and authored by the U.S. Department of Justice in concert with the ICAC Task Force program" must be followed. "One, that we don't initiate conversations with potential offenders or targets; and number two, we don't escalate those conversations only doing so once the offender or the target has indicated specific things that they're interested in or specific types of discussions they would like to engage in."

> We basically have been trained to go out and sit on the internet to wait for offenders to approach us. A number of these chat rooms, social networking sites, mobile applications will allow us to create a profile and then insert ourselves into that app or that site and basically wait to be contacted by the target or the offender of the investigation.

{¶ 11} Cmdr. Frattare further testified that "we always let the target or the suspect of the investigation bring [the] subject [of sex] up first. * * * We want to make sure we're differentiating between individuals who are interested in minor children as opposed to those who may be online for adults." Cmdr. Frattare testified that his investigators "would pull back" on the conversation if the guidelines were

not met. "I look for the mention of the age of the child during the conversation. We look for the elements as far as what the offender has talked about in terms of the sexual activity and whether he or she understands why they're traveling to that location to meet that child."

### 2. ICAC Agent Sergeant Stanley Siedlecki

{¶ 12} Sgt. Siedlecki testified that ICAC agents primarily conduct their investigations on social media apps including Grindr, Tinder, Instagram, and Facebook. He further testified about the requirements the agents must follow when engaging in a sting operation:

> There are a number of requirements put in by the Department of Justice. We do not initiate conversations with people online. We wait for people online to contact us. We do not make any sexual suggestions. We only agree to them once the topic is brought up by the other person.
>
> * * *
>
> I am able to ask questions and agree to things that the people that I'm talking to bring up.
>
> Photos that are used are not of actual children. It has to be a photo of someone that works in the law enforcement realm with their permission and understanding of what the photo is going to be used for.

{¶ 13} Sgt. Siedlecki testified that the apps differ as to the requirements to become a user. For example, Grindr requires people to enter their age to become users. Sgt. Siedlecki typically enters 18 as the age of his ICAC investigation profiles.

> Because people filter the results of the people that they see by the number of different filters, age being one of them. There's also height and weight and ethnicity. All types of different factors that people are able to filter the results of what they see. So I put my age as the minimum age that I can put on there on Grinder [sic] is 18.

{¶ 14} According to Sgt. Siedlecki, other social media apps do not require that users enter an age. "It's about 50/50 between people that don't have an age out and people that do display an age."

{¶ 15} Sgt. Siedlecki testified that users can report other users for violating the app's requirements:

> There are — on Grinder [sic] they give multiple reasons to report. It can be for underage. It can be for impersonating * * * someone else. It can be for soliciting sex for money and prostitution. Cyberbullying. There's a section for spam if people are just sending out advertisements. Those are the number of reasons people can be reported.

{¶ 16} Sgt. Siedlecki further explained how some social media users reported other users for being "underage."

> On most apps, there's usually a setting that is easily accessible by the user that would report an underage user. It's typically — in the apps that I use, it's not hard to find. It's within the home page so to speak. It's not a setting that you have to keep clicking and clicking and clicking to get to. * * * The social media applications that I use, the profiles typically change very frequently because of people reporting my profile to the parent company as somebody being underage.

{¶ 17} According to Sgt. Siedlecki, Grindr's messaging format "mimics the normal text message," so that each conversation is in its own separate thread. To toggle from one conversation to another, a user "would have to click a separate thread and the profile name would change just like it would if you are texting a person and you are texting a different person * * *."

{¶ 18} Sgt. Siedlecki testified that, as part of operation Moving Target on August 26, 2020, he was chatting with Koran on Grindr. Koran's Grindr profile had no photograph or age associated with it, and according to Sgt. Siedlecki, the

username was "Fill ur GUTS." Sgt. Siedlecki testified that "Jay's" profile included a photo of another ICAC agent when he was 15 years old.

{¶ 19} According to Sgt. Siedlecki, he sent Koran "indicator" messages prior to the message stating that "Jay" was 15 years old, "[b]ecause I am articulating myself as an unexperienced minor on Grinder [sic]." For example, Sgt. Siedlecki stated that "Jay" was "prob too young for" Koran, that "Jay" has "never done anything [to be honest]," and that "Jay" has "no idea yet * * *" if he is dominant or submissive.

{¶ 20} According to Sgt. Siedlecki, "Jay's" next message stated, "I'm 15. That cool?" Koran responded as follows: "Can I see a couple of pics? You are very handsome. FYI, be careful, a lot of idiots."

{¶ 21} In reference to Koran's response, Sgt. Siedlecki testified that

I interpret that as he read my messages and saw my age. And the reason I say that is the thousands of conversations I've had with people on apps, including Grinder [sic], when I throw my age out there, 14, 15, a very common response is, * * * you have to be careful out there, there are a lot of creeps out there, you shouldn't be on this app. That's a very typical response. So when I received, "FYI, be careful, a lot of idiots," based on my experience with the conversations with other people, I took that as an interpretation of I'm 15, that cool.

{¶ 22} After sending the message that "Jay" was 15 years old, Sgt. Siedlecki sent Koran other messages indicating that "Jay" was a minor, including that "Jay" "can't drive" and is "home alone." Sgt. Siedlecki testified that it was his "interpretation" and "belief" that Koran saw the message that "Jay" was 15 years old.

### 3. Secret Service Agent Jeffrey Casey

{¶ 23} Jeffrey Casey ("Casey") testified that he is an agent with the U.S. Secret Service, and he is a member of ICAC. Typically, his role is to interview the "child exploitation" suspects. In his career, Casey has interviewed 400-500 such suspects. "Suspects will oftentimes have a predisposed or rehearsed type reaction just in case when they show up to meet what they know to be a minor child, they will have those already in their mind and express those." Casey testified that "it's about 50/50" as far as suspects admitting "knowing the age or admit to trying to meet a child."

{¶ 24} On August 26, 2020, Casey interviewed Koran subsequent to Koran's arrest. The interview took place at the police station, which is located approximately one-quarter mile from the house at which Koran was arrested. Koran agreed to speak with Casey, who showed Koran a printout of the messages Koran and "Jay" exchanged that day. Koran acknowledged the authenticity of the conversation with the exception of one message — the message that "Jay" sent to Koran stating that "Jay" was 15 years old. According to Casey, Koran "kept saying that he didn't see it or something to that effect, he never saw that message or never saw that particular line."

{¶ 25} Casey testified that Koran first said he did not see that particular message because "he was busy driving." At some point during his interview, Koran also claimed that he did not see that message for the following reasons: "he was not wearing glasses"; he was chatting with three or four people during the same

timeframe he was chatting with "Jay"; and Grindr is sometimes slow as far as sending and receiving messages.

### 4. Kim Koran

{¶ 26} Koran testified that he is a gay male who usually meets his partners through Grindr. Asked if he looks for "people that are underage to have sex with," Koran answered, "No, I don't look for underage people at all. Usually people have in their profile that they're looking for a daddy type situation. Generally younger guys, 25 to 35 years old." Asked if he was aware of an age requirement to be on Grindr, Koran stated, "[a]bsolutely. I've turned in guys for that before, but they didn't look 25. They looked 12 and 13 years old."

{¶ 27} Asked if he ever saw the message stating that "Jay" was 15 years old, Koran testified as follows: "Absolutely not. If I would have, I would have turned him in and deleted them in my phone. It's not my thing. I don't want a 15-year-old." According to Koran the first time he saw that message was "[w]hen they showed it to me and had me initial. When they were having me initial the texts, I think I might not have initialed that because I wasn't going to claim that I saw it because I didn't see it."

{¶ 28} Asked if he had "some preplanned reaction of how you were going to handle being caught with an alleged 15-year-old," Koran answered, "I couldn't preplan something I wasn't aware of."

{¶ 29} Koran sent a message to "Jay" approximately two minutes after "Jay" sent "I'm 15, that cool," stating "FYI be careful a lot of idiots." According to Koran, he meant the following by that message:

> Well, you can get beat up. You go to meet somebody and they're not what they say they are. * * * There's been a lot of gay bashing, especially on sites. I know especially on Grinder [sic].
>
> * * *
>
> The response was only to tell him to be careful. It had nothing to do with an age disclosure. I didn't see an age disclosure. That was just letting him know because he said he's new. But just general, people when they end a conversation, they'll tell you, be safe, be careful, to remind you that it's not what it appears to be out there sometimes.

{¶ 30} Koran explained the terminology "daddy" and "boy" within the Grindr culture. "The boy is generally younger, submissive. Generally a passive or bottom. The daddy is older, dominant, a top. * * * There's guys on there that are 40 years old that refer to themselves as a boy looking for a daddy."

{¶ 31} Koran testified that on his iPhone, the Grindr messages are "about as small as a postage stamp." According to Koran, he typically wears glasses "if I have something to read."

{¶ 32} Asked if he had "a belief as to the general age" of the person depicted in "Jay's" Grindr profile, as well as the second picture of the same person that "Jay" sent to Koran, Koran responded, "23 to 25, 26. Looked like college age or just out of college."

{¶ 33} Asked if "Jay's" message that "he didn't have a license" was associated with "Jay's" age, Koran answered: "That had absolutely no bearing at all. Just

because you don't have a license or you don't have a car — I cart around most of my friends. They don't have a car."

{¶ 34} Koran testified that he told the law enforcement officers "several possibilities as to why" he did not see the message about "Jay's" age, "after I was asked the same questions ten times." Koran testified that it might have been because he was not wearing his glasses; he was driving in "rush hour traffic. It was fivish"; he was chatting with multiple people at the same time; or there is a lag-time as to when messages "come through" on Grindr. Asked how he could have missed Jay's message that he was 15 years old, Koran stated, "If I'm texting with the other gentleman, his box is open, not Jay's at this point. And I wouldn't see Jay's until I opened the box back up. I wouldn't be aware it was there."

{¶ 35} Koran testified that he has been using Grindr for seven to eight years and has turned users in to Grindr in the past if he believed they were underage. "Probably four, maybe five in the whole time I've been on there, but I mean, they look 10, 11 years old."

{¶ 36} Asked if he has "ever actively pursued or looked for a relationship, a sexual relationship, with somebody under the age of consent," Koran answered, "No."

## II.  Law and Analysis

{¶ 37} Koran assigns two errors for our review, and we address them together because they are interrelated.

> The convictions in this case were obtained against the manifest weight of the evidence.

There was insufficient evidence to permit the trier of fact to find beyond a reasonable doubt that Mr. Koran committed the offense of possessing criminal tools.

### A. Standard of Review — Sufficiency and Manifest Weight of the Evidence

{¶ 38} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 39} A manifest weight of the evidence challenge "addresses the evidence's effect of inducing belief. * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387. Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### B. Koran's Convictions

#### 1. Attempted Unlawful Sexual Conduct with a Minor

{¶ 40} Unlawful sexual conduct with a minor is defined in R.C. 2907.04(A) in part as follows: "No person * * * shall engage in sexual conduct with another * * * when the offender knows the other person is" 13-15 years old "or the offender is reckless in that regard."

{¶ 41} Criminal attempt is defined in R.C. 2923.02(A) in part as follows: "No person, purposely or knowingly, * * * shall engage in conduct that, if successful, would constitute or result in the offense."

#### 2. Importuning

{¶ 42} Importuning is defined in R.C. 2907.07(D)(2) in part as follows: "No person shall solicit another by means of a telecommunications device * * * to engage in sexual activity with the offender when * * * [t]he other person is a law enforcement officer posing as a person" 13-15 years old, and "the offender believes that the other person is" 13-15 years old "or is reckless in that regard * * *."

#### 3. Disseminating Matter Harmful to Juveniles

{¶ 43} Disseminating matter harmful to juveniles is defined in R.C. 2907.31(A)(1) in part as follows: "No person, with knowledge of its character or content, shall recklessly * * * deliver, furnish, disseminate, [or] provide * * * a law enforcement officer posing as a juvenile * * * any material * * * that is obscene or harmful to juveniles * * *."

### 4. Possessing Criminal Tools

{¶ 44} Possessing criminal tools is defined in R.C. 2923.24(A) in part as follows: "No person shall possess * * * any substance [or] device * * * with purpose to use it criminally."

## C. Mens Rea

{¶ 45} The mens rea at issue in Koran's convictions for attempted unlawful sexual conduct with a minor, importuning, and disseminating matter harmful to juveniles is knowledge or recklessness.

{¶ 46} Pursuant to R.C. 2901.22(B), a

> person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 47} Pursuant to R.C. 2901.22(C), a

> person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 48} The mens rea at issue in Koran's possessing criminal tools conviction is purposeful. Pursuant to R.C. 2901.22(A), a

> person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against

conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

**D. Analysis**

{¶ 49} The gist of Koran's argument on appeal in his first assignment of error is that his convictions are against the weight of the evidence because of "his sworn testimony that he simply did not see the one and only text message sent by 'Jay' concerning his claimed age." Additionally, in his second assignment of error, Koran argues that there was insufficient "evidence adduced at trial * * * to prove beyond a reasonable doubt that [he] possessed an iPhone and some 'plant-like material' with the purpose to use it criminally, and whether these items were intended for use in the commission of a felony."[1]

{¶ 50} The crux of the case at hand is whether Koran knew, or acted recklessly in that regard, that "Jay" was allegedly 15 years old. The state put forth evidence showing that "Jay" sent Koran a message that "Jay" was 15 years old. Koran does not dispute this. Rather, Koran argues that he did not see the message and, therefore, had no knowledge of "Jay's" purported age and did not act recklessly in that regard.

{¶ 51} Whether Koran knew or acted recklessly turns on the credibility of the witnesses and evidence presented at the bench trial. Ohio courts have uniformly held that "the weight to be given the evidence and the credibility of the witnesses are

---

[1] According to Koran's indictment, he was charged with possessing criminal tools, "to wit: cell phones and equipment * * *." Koran was not charged with possessing "plant-like material" with the purpose to use it criminally.

primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The factfinder "is in the best position to observe the witnesses' demeanor, voice inflection, and mannerisms, in order to determine the credibility of each witness." *State v. Dowd*, 8th Dist. Cuyahoga No. 80990, 2002-Ohio-7061, ¶ 23. "Furthermore, a trier of fact is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Williams*, 2019-Ohio-794, 132 N.E.3d. 1233,¶ 28 (8th Dist.).

{¶ 52} Having reviewed the record in the case at hand, we cannot say that the trial court, acting as the factfinder, lost its way by convicting Koran of the offenses with which he was charged. The trial court heard the state's evidence, as well as the state's position that Koran knew "Jay's" age or acted recklessly in that regard. The trial court also heard Koran's testimony that he did not know "Jay's" age, because he did not see the message at issue, and Koran's explanation of why he may not have seen this message. This is not the exceptional case, which creates "such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 547, 678 N.E.2d 541.

{¶ 53} As to the possessing criminal tools conviction, we likewise find that the state presented legally sufficient evidence to sustain a guilty verdict. It is undisputed that Koran used his iPhone to engage in criminal conduct by exchanging messages that were sexual in nature with an undercover law enforcement agent purporting to be 15 years old. What Koran disputed was whether he did so purposefully. The evidence admitted at trial included the message "Jay" sent to

Koran that "Jay" was 15 years old, in addition to the "indicator" messages signaling "Jay's" youth. This evidence, if believed, is sufficient to convince the average mind that Koran purposely used his phone to engage in criminal conduct.

{¶ 54} Accordingly, Koran's first and second assignments of error are overruled.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR