# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JERRY E. GRANBERRY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 CO 0008**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 636

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino,* Prosecuting Attorney, *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office*,* for Plaintiff-Appellee and

*Atty. Scott R. Cochran,* for Defendant-Appellant.

Dated:  January 15, 2025

**Robb, P.J.**

**{¶1}** Defendant-Appellant Jerry E. Granberry appeals his convictions entered after a bench trial in the Columbiana County Common Pleas Court. Appellant raises four assignments of error challenging the sufficiency of the evidence on various elements of the offenses. These arguments are without merit. For the following reasons, Appellant's convictions are upheld, and the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

**{¶2}** On October 6, 2022, Appellant was arrested after responding to an undercover detective's online post advertising the services of a mother-daughter escort pair. The February 8, 2023 indictment included charges for compelling prostitution (a third-degree felony), attempted unlawful sexual conduct with a minor (a fourth-degree felony where the offender is 10 or more years older), engaging in prostitution (a first-degree misdemeanor), and possession of criminal tools (a fifth-degree felony where the device is intended for use in a felony). A charge of importuning (count one) was dismissed by the state prior to trial.

**{¶3}** Appellant waived his right to a jury trial. At the bench trial, the state presented the testimony of an East Palestine police detective who was tasked with conducting demand reduction operations for the Mahoning Valley Human Trafficking Task Force. (Tr. 12-13). In his twenty years of experience in undercover online operations, he learned to use terminology unique to the sex trade industry. (Tr. 13-14, 18-19, 39).

**{¶4}** In the fall of 2022, the detective posted an ad on a website called skipthegames.com, which he said was commonly used to find sex for hire from prostitutes or escorts. (Tr. 15-16, 27). When advertising during a sting operation involving a juvenile sex worker, the detective does not initially specify age or sexual services, as he believes this would cause service seekers to suspect a law enforcement sting. (Tr. 29-30). After a potential client texts to request services, the detective reveals the juvenile's age early in the conversation to avoid a perceived "bond" forming before finding out the juvenile is under sixteen; he hopes the would-be client will back out after the age of the juvenile is disclosed. (Tr. 28-29).

{¶5} The subject ad was posted in the "Female escort" category with the tagline, "M and D incall ***** if ya know ya know *****." (Asterisks original.) This was followed by the poster's age of 35. The detective explained the terminology: M and D referred to mother and daughter; incall meant the client must come to them; and the last phrase reinforced the idea that the phrase "M and D" had a significant, secretive meaning. (Tr. 36-38).

{¶6} Three photographs were displayed in the ad. The first showed an adult female posing next to a girl with brown hair (who appeared to a young teenager or preteen); the girl was holding the camera, showing she was taking a joint selfie using a mirror. The second photograph depicted the same woman posing with a girl with blonde hair (who appeared to be a young teenager or preteen). The third photograph contained only one subject, a seemingly different teenage girl with blonde hair pulled back.

{¶7} After the photographs, the detective provided responses to standard categories, such as accepted payment method ("Cash"), hours ("24/7"), and breasts ("Wow"). Next, the ad said,

READ don't waste your time or ours.

* Incall only. You dont need pics. If you ask gonna assume your window shopping and not serious and the convo ends. No exceptions

* * We are what you think we are. So not for everyone, if ya know ya know.

Dont waster our time if ya ain't feeling the vibe.

Don't judge us and we wont judge you.

Be respectful

(Asterisks original). (St.Ex. 1).

{¶8} The website also displayed a "call me" icon. When clicked, the entry of a captcha is required in order to obtain the phone number (which the detective obtained specifically for this ad). (Tr. 22-24). On September 28, 2022, Appellant's phone texted the number in the ad to ask, "A[r]e yall available" followed an hour later by "??" After Appellant texted the question marks, the detective responded, "Yep." Appellant replied, "I'm ready now I wanted about 30 minutes if possible." The conversation stopped after the detective explained, "East Palestine incall." (St.Ex. 1).

Case No. 24 CO 0008

{¶9} Eight days later, on the morning of October 6, 2022, Appellant asked, "Are yall available this morning?" After hours went by with no response, Appellant again asked, "Are yall available?" In reply, the detective asked, "U know what our sf is about right" to which Appellant said, "Yes." The detective asked where Appellant was coming from, and Appellant asked where they would meet. The detective reminded Appellant the incall location was East Palestine. Appellant said he could arrive in 25 minutes and asked for a more specific location. Appellant was told to send a screen shot of his GPS location after which a neighboring address would be provided followed by the final address; he was told this procedure was used "to weed out no shows."

{¶10} The detective also texted, "I'm 36 she's not 18 yet so if you ain't into that I can only book ya for me. Sorry." Appellant responded, "Good with both." The detective then further explained, "I'm 36 she's 15 I'm not a bad person we just do this for the money and she's cool with it and keeps her own money" and then, "I'm Mya she's Katie." Appellant said, "Ok nice to meet you."

{¶11} The detective asked, "What did ya want for rate" and "What want cuz need to know if ya even got enough?" Appellant replied, "A 1/2 hour with yall."

{¶12} The detective inquired, "Full service or something else?" When Appellant said, "Yes," the detective further inquired, "Uh…which ding ding?" Appellant specified, "Full service." The detective then provided a rate quote, "Full is 180 hh 240 hr rain coats needed with her." Appellant responded, "Ok." (St. Ex. 2). According to the detective's testimony, full service means a combination of oral and vaginal sex but not anal sex and a raincoat is a condom. (Tr. 52-53).

{¶13} Over the next minutes, Appellant sent a screen shot of his GPS location, received a store address in East Palestine, and then received a specific house location with a notation about the porch light. (Tr. 54-57); (St.Ex. 2, 2a). When Appellant arrived at the house, a waiting police officer in a patrol car placed Appellant under arrest. (Tr. 57, 124). The testimony of this police officer confirmed the detective's testimony that Appellant was carrying on his person $180 in cash and one condom. (Tr. 59-60, 126). In addition, this officer recovered Appellant's phone from under the driver's seat after the detective called the phone. (Tr. 58-59, 127-128).

**{¶14}** On cross-examination, the detective was asked about the website's list of rules for those posting the ads, such as: "All posters must be of legal age"; "You may not post any content or information of anyone that is not of legal age"; and "You may not mention or infer any person advertised is of less than legal age. Words like 'young,' 'school girl-like' or similar may not be used." (Tr. 64-65); (St.Ex. 1). He indicated these rules for the advertiser were not displayed in the ad for the potential clients and also pointed out he was aware of juveniles using the site in his experience. (Tr. 103, 107). On being asked why each of the three photographs appeared to depict a different juvenile, the detective explained the people in the photographs were manipulated through an artificial intelligence application applying face filters to photographs of himself and other adult employees at the police department. (Tr. 68-70).

**{¶15}** After the testimony of the detective and the arresting officer, the trial court denied a motion for acquittal, the defense rested, and the court permitted the parties to file closing briefs. Thereafter, the trial court found Appellant guilty in open court and ordered a presentence investigation. He was subsequently sentenced to fifteen months in prison for attempted unlawful sexual conduct with a minor and lesser concurrent sentences on the other offenses. (2/29/24 J.E.). Appellant filed a timely notice of appeal.

## SUFFICIENCY OF THE EVIDENCE

**{¶16}** Appellant's assignments of error all include legal arguments on the sufficiency of the evidence. Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001). In other words, sufficiency involves the state's burden of production, rather than the burden of persuasion relevant to a weight of the evidence review. *Thompkins* at 390 (Cook, J., concurring).

**{¶17}** In reviewing the sufficiency of the evidence, the court views the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether "any" rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (consider all evidence in the light most

favorable to the prosecution, including reasonable inferences); *State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999) (viewing reasonable inferences in favor of the state); *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485 (2001).

ASSIGNMENT OF ERROR ONE

{¶18} Appellant's first assignment of error contends:

"The Trial Court's decision that the Defendant was guilty of Count 2 of the Indictment, Compelling Prostitution, was not supported by sufficient evidence as there was insufficient evidence to establish the element of a minor's agent."

{¶19} Compelling prostitution as charged in this case has the following elements: "No person shall knowingly . . . Pay or agree to pay a person the offender believes to be a minor, either directly or through the person's agent, so that the person will engage in sexual activity, whether or not the person is a minor." R.C. 2907.21(A)(3)(b). According to Appellant, when a defendant agrees through a person said to be a minor's agent, the statute should be construed so as to require an actual/separate person who is the principal of the agent because there cannot be an agent without a principal (while agreeing the principal does not actually have to be a minor). In so arguing, he relies on a portion of the Supreme Court's reasoning in a case discussing a different subdivision in the former version of the compelling prostitution statute (before the amendment adding the subdivision at issue in our case).

{¶20} In the cited Supreme Court case, the defendant was charged with compelling prostitution after agreeing through phone calls and texts to pay $500 to have sex with a confidential informant and her fictitious juvenile daughter. *State v. Bartrum*, 2009-Ohio-355, ¶ 2-3 (9th Dist.) (where the defendant began driving to the motel but did not follow through with arrival). Distinguishably, the subdivision at issue in that case provided: "No person shall knowingly . . . Pay or agree to pay a minor, either directly or through the minor's agent, so that the minor will engage in sexual activity, whether or not the offender knows the age of the minor." Former R.C. 2907.21(A)(3). Currently, this provision is labeled subdivision (a) of (A)(3), as subdivision (b) was added after the commission of the offenses in *Bartrum*. R.C. 2907.21 (effective 9/11/08).

**{¶21}** The Supreme Court pointed out the former statute's lack of explicit reference to an agreement "believed to be with a minor" could lead to two reasonable interpretations, one being an actual minor must exist and one being an actual minor is not required. *Bartrum* at ¶ 15-16. As emphasized by Appellant, the Court then observed: "Similarly, the clause addressing payment to 'the minor's agent' might indicate an actual minor is necessary. It is axiomatic that for an agent to exist, a principal must also exist . . . In order for a minor's agent to exist, it would follow that a minor principal must also exist." *Id.* at ¶ 16.

**{¶22}** Due to the competing reasonable conclusions on whether an actual minor must have existed, the Court found the statutory language was ambiguous. *Id.* at ¶ 17. Pointing out the ambiguity must be construed liberally in favor of the defendant and strictly against the state, the Court concluded former (A)(3) of R.C. 2907.21 must be read as requiring an actual minor. *Id.* at ¶ 18-19. However, the Court then added the following caveat:

> In so holding, we note that this version of the statute is no longer in effect. The current version of R.C. 2907.21(A)(3) adds subsection (b), which expands the definition of compelling prostitution to include those who "[p]ay or agree to pay *a person the offender believes to be a minor,* either directly or through the person's agent, so that *the person* will engage in sexual activity, whether or not *the person* is a minor." (Emphasis added.) This new language addresses the ambiguity of the former version, making it clear that an actual minor is now not necessary for a conviction of compelling prostitution. Accordingly, our decision in this case is limited to the previous version of the statute effective at the time of Bartrum's conviction.

*Id.* at ¶ 19.

**{¶23}** Notwithstanding this observation by the Supreme Court, Appellant believes the statutory amendment only corrected one of the issues discussed in *Bartrum's* holding. He acknowledges the legislature addressed the issue with the lack of language about agreeing to pay "a person the offender believes to be a minor" through the person's agent "whether or not the person [he believes is a minor actually] is a minor." However, Appellant claims the amendment failed to address the scenario where there is a fictitious

principal; i.e., the person Appellant believes is a minor does not exist as even an adult. Emphasizing the Court's observation that for every agent there must be a principal, Appellant concludes the detective failed to show he was the agent of an actual person believed to be a minor. He is essentially arguing the detective could not act as both the fictitious principal and the fictitious agent.

**{¶24}** However, Appellant's contention with regards to the statutory amendment ignores the Supreme Court's statement in ¶ 20 quoted above. The Court indicated the new subdivision (b) of R.C. 2907.21(A)(3) resolved the ambiguity concerns expressed by the Court in that very opinion, which would include the issue with agreeing to pay through an agent. *See Bartrum* at ¶ 20.

**{¶25}** Moreover, in the portion of ¶ 16 relied on by Appellant here, the Court was discussing the language "the minor's agent," not the new language "the person's agent," and the discussion was taking place *in the context* of analyzing other words used or not used in the statute defining the offense at the time. The statement about an agent requiring a principal was used to bolster one reasonable interpretation of the statute's repeated use of the term minor (due to the absence of language such as "person believed to be a minor" and "whether or not the person is a minor"); it was not a standalone holding requiring two different humans to be actively involved on the law enforcement side of the phone. *See id.* at ¶ 16-17.

**{¶26}** In any event, testimony indicated other police department employees voluntarily provided their photographs to the detective for use in the advertisement, adding other individuals to the principal-agency mix. This assignment of error is without merit, as there was evidence by which a rational person could find Appellant did "knowingly . . .agree to pay a person [he] believe[d] to be a minor, either directly or through the person's agent, . . . whether or not the person is a minor." R.C. 2907.21(A)(3)(b). The element on sexual activity (represented by our ellipsis in the prior sentence) is separately challenged in Appellant's next assignment of error.

ASSIGNMENT OF ERROR TWO

**{¶27}** Appellant's second assignment of error alleges:

"The Trial Court's decision that the Defendant was guilty of Count 2 Compelling Prostitution and [Count] 3, Attempted Unlawful Sexual Conduct with a Minor, was not

supported by sufficient evidence to establish the elements of Sexual Activity and Sexual Conduct with a minor."

**{¶28}** Sexual activity means "sexual conduct or sexual contact, or both." R.C. 2907.01(C). Sexual conduct is "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A) ("Penetration, however slight, is sufficient to complete vaginal or anal intercourse."). Sexual contact is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶29}** Appellant challenges whether the evidence sufficiently demonstrated the requisite sexual motivation required with regard to a minor. He challenges the element of "sexual activity" for the compelling prostitution offense defined as follows: "No person shall knowingly . . . Pay or agree to pay a person the offender believes to be a minor, either directly or through the person's agent, so that the person will engage in sexual activity, whether or not the person is a minor." R.C. 2907.21(A)(3)(b).

**{¶30}** He also challenges the element of "sexual conduct" for the attempt to commit the unlawful offense of sexual conduct with a minor, which underlying offense has the following elements: "No person who is eighteen years of age or older shall engage in sexual conduct with another when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A), (B)(3) (third-degree felony when offender is ten or more years older, which is reduced by a level for attempt). An attempt to commit an offense has the following additional elements: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A) (defining attempt), (E)(1) (lowering degree of offense attempted).

**{¶31}** "It is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed

Case No. 24 CO 0008

had the attendant circumstances been as the actor believed them to be." R.C. 2923.02(B). A defendant's act of driving to meet a person believed to be under sixteen years of age upon entering an agreement for engaging in sexual conduct with the child (and the adult) constitutes a substantial step in the commission of the offense of unlawful sexual conduct with a minor and is strongly corroborative of his criminal purpose. *State v. Paster*, 2014-Ohio-3231, ¶ 24 (8th Dist.); *State v. Tarbay*, 2004-Ohio-2721, ¶ 22-23 (1st Dist.).

**{¶32}** "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Lower mental states satisfy higher mental states, and a person acts purposely when it is the person's specific intention to cause a certain result. R.C. 2901.22(A) (defining purposely) (E) ("When knowledge suffices to establish an element of an offense, then purpose is also sufficient culpability for such element.") Because a defendant's intent dwells in his mind, the surrounding facts, circumstances, and resulting inferences are all used to demonstrate intent. *Treesh*, 90 Ohio St.3d at 485.

**{¶33}** In support of his argument as to both offenses, Appellant states the ad did not allude to sexual activity, let alone sexual activity with a minor, merely because it was in the female escort category, spoke of cash payment, used "M and D incall" as a tagline, and contained secretive, suggestive language such as: "We are what you think we are. So not for everyone, if ya know ya know. Dont waste our time if ya ain't feeling the vibe. Don't judge us and we wont judge you."

**{¶34}** Appellant points to the detective's acknowledgement that the website is not only used for prostitution but is also used for massages. However, the detective also opined the massage advertisements were all illicit massage parlors in his experience.

**{¶35}** Appellant emphasizes how the website's rules require advertisers to be of legal age and prohibit advertisers from posting information on those under the legal age. Yet, the detective's testimony indicated, in his experience, the rules are not difficult to disobey, they were not displayed to the viewer, and he knows of juvenile prostitutes using the website.

**{¶36}** Appellant claims the detective defined "full service" as "oral and vaginal sex, or something else" and says this addition of "something else" shows non-sexual activity

could be what Appellant meant when requesting full service. Appellant concludes a rational person could not find the "direct evidence" proves the elements of sexual activity or sexual conduct, claiming the inferences required (in order to find he offered to pay for sex with a person believed to be a minor) were speculative, not based on logic, and should be resolved in his favor. *See State v. Azeen*, 2021-Ohio-1735, ¶ 36, 65 (8th Dist.) (although Appellant cites the Supreme Court's dissent, the majority also recognized a court should not infer the existence of facts from mere possibilities).

**{¶37}** Initially, we point out the detective's testimony on the term "full service" is not quoted in the brief with the precise punctuation contained in the transcript. Moreover, the quoted words must be read in the context of the sentence in which they appear and in the context of the entire discussion, rather than in isolation. At the portion cited, the detective was relaying the information contained in the text conversation, and the term "full service" was discussed more in subsequent testimony.

**{¶38}** That is, State's Exhibit 2 showed the detective asked, ""Full serv *or something else*?" (Emphasis added.) When Appellant answered in the affirmative, the detective texted, "Uh…which ding ding?" and Appellant replied, "Full service." (St.Ex. 2).

**{¶39}** The quote Appellant relies on occurred within the detective's summary of those texts: "Mr. Granberry says a half hour with you all. And I then asked a clarifying question of full service - - *which full service is terminology used for oral and vaginal sex -- or something else.* Mr. Granberry then advises, yes. So then I say which because I asked two questions. And then he says full service." (Emphasis added.) (Tr. 52).

**{¶40}** Clearly, the detective's use of the term "something else" in this context on page 52 was a reference to the question in the text message, "Full serv or something else?" His testimony did not imply the agreed upon rate of $180 for a half hour for full service was for services less than oral or vaginal sex. In fact, the detective was thereafter asked, "And what does full service mean in the community that utilizes these sex for hire websites?" The detective responded, "Full service is a combination of oral and vaginal sex." (Tr. 52) He also pointed out it does not include anal sex. (Tr. 53).

**{¶41}** Lastly, as we are reading the testimony in context, we will note after explaining the term does not include anal sex, the detective added, "Sometimes it includes kissing. It all depends on the female. But sometimes the men will ask. But it's

typically oral, vaginal sex - - full service." (Tr. 52-53). Although Appellant does not set forth an argument on this testimony, we note this is reasonably interpreted in context as meaning: full service, which is oral and vaginal sex, may or may not include the additional service of kissing.

**{¶42}** Next, Appellant points to the detective's initial response to Appellant's October 6, 2023 text on availability, wherein the detective asked, "U know what our sf is about right?" Appellant urges this indicates he was merely agreeing to pay for a "sexual fantasy" (abbreviated sf), which does not necessarily involve actual sexual activity (i.e., a fantasy is not real). The detective testified he meant to type ad instead of sf, noting the proximity of these letters on a keyboard (the letter s is next to the letter a, and the letter f is next to the letter d).

**{¶43}** Regardless, if a person responds to an online ad with the content discussed above, asks if "yall"[1] are available, and agrees to pay $180 to a 36-year-old and a 15-year-old pair of female strangers to let him drive to their location for a half hour of "full service" with both of them (after being told "raincoats needed" for the minor), then the use of the term "sexual fantasy" leads to a reasonable inference that the payment is for Appellant's participation in sexual activity including sexual conduct in the context of the "M and D" (mother and daughter) sexual fantasy. Furthermore, Appellant then followed secretive instructions for traversing multiple locations before being provided with the actual address and arrived with the requested $180 in his pocket and one condom despite the request for full service with both females, which was consistent with the adult advertiser's demand for protection to be used with the minor (but not for herself).

**{¶44}** We incorporate our recitation of the trial evidence from our Statement of the Case above. We also observe many of Appellant's contentions here concern the credibility of witnesses or the general weight of the evidence. Sufficiency of the evidence and weight of the evidence are distinct concepts with different tests. *Thompkins*, 78 Ohio St.3d at 386-387. The state merely has a burden of production for sufficiency, whereas the burden of persuasion involves a weighing process. *Id.* at 390 (Cook, J., concurring).

---

[1] Appellant's use of the term "yall" clearly is the use of y'all, which is a plural pronoun contraction for you all, referring to more than one person. *See* dictionary.com ("used in direct address usually to two or more people, or to one person who represents a family, organization, etc."); *Merriam-Webster*.com/dictionary ("usually used in addressing two or more persons").

As set forth in the section above defining the sufficiency test, the evidence is viewed in the light most favorable to the state and witnesses are believed when making the legal determination of whether *any* rational trier of fact could find the contested element proven beyond a reasonable doubt. *Murphy*, 91 Ohio St.3d at 543; *Getsy*, 84 Ohio St.3d at 19.

**{¶45}** Contrary to Appellant's contention, any inferences here were reasonable, and those inferences are thus construed in favor of the state. *Jackson*, 443 U.S. at 319; *Filiaggi*, 86 Ohio St.3d at 247. Again, it must be pointed out circumstantial evidence has the same probative value as direct evidence. *Treesh*, 90 Ohio St.3d at 485. Some rational person could find Appellant knowingly agreed to pay so the person believed to be a minor would engage in sexual activity satisfying the compelling prostitution elements challenged by Appellant under this assignment of error. Likewise, some rational person could find he knowingly attempted to engage in sexual conduct with a 15-year-old for purposes of the elements challenged by Appellant here on the offense of attempted unlawful sexual conduct with a minor.

**{¶46}** Distinctly, weight of the evidence concerns the effect of the evidence in inducing belief, and our review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins* at 387. When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220 (5th Dist.).

**{¶47}** Assigning weight to evidence and credibility to witnesses constitute tasks primarily left to the trier of the facts. *State v. Hunt*er, 2011-Ohio-6524, ¶ 118 (1st Dist). The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not

choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, ¶ 105 (7th Dist.).

**{¶48}** Although not specifically raised, because some of Appellant's contentions sound more in weight of the evidence concepts, we reviewed all evidence under this theory as well and conclude this is not the exceptional case where the trial court lost its way and created a manifest miscarriage of justice in weighing the evidence on these offenses. This assignment of error is without merit.

ASSIGNMENT OF ERROR THREE

**{¶49}** Appellant's third assignment of error states:

"The Appellant's conviction for Engaging in Prostitution under O.R.C. 2907.231(B) was not supported by sufficient evidence as the agent solicited the Appellant first."

**{¶50}** In addition to the negotiations and Appellant's actual arrival related to the minor, Appellant also negotiated for the services of an adult to occur at the same time. The charge of engaging in prostitution has the following elements: "No person shall recklessly induce, entice, or procure another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person." R.C. 2907.231(B), (D) (a first-degree misdemeanor). Sexual activity for hire is defined as "an implicit or explicit agreement to provide sexual activity in exchange for anything of value paid to the person engaging in such sexual activity, to any person trafficking that person, or to any person associated with either such person." R.C. 2907.231(A)(2).

**{¶51}** "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The word procure in criminal statutes is generally defined as including "obtain" in addition to "get" or "bring about" and other synonyms. *See, e.g., Ohio Jury Instructions*, CR § 507.21 (Rev. Sep. 24, 2022) (defining procured for compelling prostitution instruction as "obtained, assisted, induced, persuaded, or encouraged"), 507.22 (Rev. May 3, 2014) (defining procured for promoting prostitution instruction as "obtained, acquired, introduced, or brought about"), 523.03(A) (Rev. Feb. 6, 2016) (defining procure for complicity instruction as "to get, obtain, induce, bring about, motivate").

Case No. 24 CO 0008

**{¶52}** Appellant states that even if his prior arguments on "full service" and intent to engage in sexual activity fail, he cannot be convicted of this offense if he was not the first participant in the conversation to offer the sexual activity for money. He says there was no sexual innuendo in the ad or in the initial texts until the detective mentioned the information needed to calculate a rate. He acknowledges the offense does not require sexual activity to take place but contends it does not apply to the person who merely accepts or agrees to the other person's inducement, enticement, or procurement.

**{¶53}** Although Appellant was the client, he relies on a case where the defendant was the prostitute who was convicted of a different offense, soliciting. *See* R.C. 2907.24 ("No person shall knowingly solicit another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person"). The cited court used a definition of solicit that included "entice" which is one of the optional elements in the offense at bar. *See State v. Swann*, 142 Ohio App.3d 88, 89-90 (1st Dist. 2001).

**{¶54}** In *Swann*, the First District found the prostitute did not "entice, urge, lure or ask" by merely accepting a client's entreaty to engage in sexual activity for hire. *Id.* Seemingly focusing on the initial or "original" offer, the court reversed the conviction upon finding the defendant did not ask the officer for anything but "simply agreed to his suggestion." *Id.* (the officer asked for oral sex and offered money or drugs; the defendant agreed to be paid in money; the officer asked if $10 was enough; and the defendant asked for $15).

**{¶55}** It has been opined the *Swann* defendant was not exonerated because the officer named the particular sexual activity and price, but because the defendant merely agreed to the officer's advances. *State v. Short*, 2017-Ohio-7200, ¶ 30-32 (2d Dist.), citing *Columbus v. Myles*, 2005-Ohio-3933, ¶ 24 (10th Dist.) (upholding a conviction where: the defendant approached undercover officers to ask what they were seeking and invite them to a house; when asked what they would do there, the defendant asked how much money they had; the officer responded by naming an amount and a sex act, and the defendant agreed); *City of Cleveland v. Beasley*, 2010-Ohio-769, ¶ 25 (8th Dist.) (the defendant need not explicitly refer to sexual activity for hire).

**{¶56}** Furthermore, the Second District rejected the First District's *Swann* case to the extent the case intended to hold "the State has the burden to demonstrate that a

person accused of soliciting prostitution not only offered to engage in sexual activity for hire, but initiated an offer that was complete in those terms." *State v. West*, 2009-Ohio-6270, ¶ 21 (2d Dist.). To the contrary, where the statute prohibits a solicitation or an offer: "*Whether it is done in the form of an initial offer, a counter offer, or in response to an open inquiry, is immaterial.*" (Emphasis added.) *State v. Wendling*, 2022-Ohio-496, ¶ 20 (2d Dist.), quoting *West* at ¶ 20.

{¶57} The First District subsequently clarified or stepped back from its perceived position in *Swann* by observing that although the "crime is in the asking" (not in the agreeing), "[t]he fact that the officer was the first one to state a dollar amount does not negate [the defendant's] role in the exchange." *State v. Bennett*, 2015-Ohio-3246, ¶ 9, 11 (1st Dist.). In *Bennett*, the defendant asked an undercover officer if she was working and said he was looking for someone who would be regularly available; the officer asked what he was looking for and what he was willing to pay; the defendant asked the charge for ordinary sexual activities at the officer's home; and the defendant then agreed to the officer's rate and planned to meet later. *Id.* at ¶ 1.

{¶58} After pointing to the Second District's rejection of the First District's *Swann* case, our district found a defendant's reliance on *Swann* was irrelevant where the defendant was the one who initially indicated to the officer that she was asking if he wished to add sexual activity to his massage. *State v. Pan*, 2023-Ohio-3172, ¶ 18 (7th Dist.). The officer's subsequent questioning to clarify the defendant's meaning and to learn the cost did not negate the invitation or inquiry of the defendant. *See id.* at ¶ 5-6, 18.

{¶59} Here, Appellant texted a phone number he found in an online ad wherein the poster did not refer to sex or rates. On his first attempt to connect with the woman and girl in the photographs under the tagline "M and D incall," Appellant asked if they ("yall") were available and then sent question marks over an hour later when he received no response. He then received the undercover detective's mere response "Yep" to which Appellant said he was "ready now" and wanted 30 minutes. When the detective replied, "East Palestine incall," Appellant stopped responding.

{¶60} Just over a week later, Appellant initiated texts to the number again. After Appellant's first text ("Are yall available this morning?") went unanswered for hours, he

again prompted, "Are yall available?" At that point, the detective replied, "U know what our sf is about right?" Appellant answered in the affirmative. The detective asked Appellant's age and location, Appellant responded and asked for the detective's location, prompting the detective to remind Appellant the incall location was East Palestine. Appellant said he could be there in 25 minutes and asked for a specific address.

{¶61} The detective then gave information on the names and ages of the participants (36 and 15), stating the child keeps her own money and asking if he was okay with the age. Appellant said "Ok nice to meet u." When informed a rate could not be provided until Appellant said what he wanted, Appellant said, "A 1/2 hour with yall." This prompted the detective to ask what service Appellant wanted by inquiring, "Full serv or something else?" When Appellant said he wanted full service, the detective provided the rates. (St.Ex. 2).

{¶62} Appellant not only originated the first contact from a static ad that did not reach out to viewers and thus instigated the series of events at issue, he requested immediate service and directions. A servicer's clarifying inquiries before providing directions do not turn the client's conduct into a mere acceptance of an offer. "The fact that the officer was the first one to state a dollar amount does not negate [Appellant's] role in the exchange." *Bennett*, 2015-Ohio-3246, at ¶ 9, 11 (1st Dist.) (clarifying or stepping back from *Swann*). Moreover, the fact that Appellant's texts were responding to an "open inquiry" advertisement for "M and D incall" is not dispositive. *See Wendling*, 2022-Ohio-496, at ¶ 20 (2d Dist.), quoting *West*, 2009-Ohio-6270, at ¶ 22 (2d Dist.). Contrary to Appellant's argument, the evidence did not indicate he merely acquiesced to an offer by the detective.

{¶63} Some rational person could find Appellant recklessly induced, enticed, or procured another to engage in an implicit or explicit agreement to provide sexual activity in exchange for anything of value (to the person engaging in such sexual activity, to any person trafficking that person, or to any person associated with either such person). *See* R.C. 2907.231(A)(2) (defining the element of sexual activity for hire), (B) (defining the offense of engaging in prostitution). Viewing the evidence in the light most favorable to the state, it was sufficiently established that Appellant "obtained" an agreement with another to provide sexual activity in exchange for money. (Likewise, Appellant's texts

"brought about" or "got" the agreement.) The arguments within this assignment of error are without merit.

## ASSIGNMENT OF ERROR FOUR

**{¶64}** Appellant's final assignment of error provides:

"The Trial Court's decision that the Defendant was guilty of Count 5, Possession of Criminal Tools was not supported by sufficient evidence as there was insufficient evidence to establish the Appellant possessed his phone with the intent to commit a criminal offense."

**{¶65}** Possession of criminal tools has the following elements: "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A). The offense was a fifth-degree felony because the circumstances indicated the device "was intended for use in the commission of a felony." R.C. 2923.24(C).

**{¶66}** Appellant focuses on the possession of the criminal tools element of purpose to use the phone criminally and the degree-enhancing element of intent for use in committing a felony. In support, this simply sets forth the following argument: "For the reasons set forth in the First through the Third Assignments of error, there was insufficient evidence to convict the Appellant of criminal activity, and specifically, a felony. As a result, there was insufficient evidence for the conviction of this Count." Accordingly, this assignment of error is conditionally raised in case the court agrees with prior arguments.

**{¶67}** As concluded in the first three assignments of error, there was sufficient evidence to convict Appellant of the felonies in counts two and three and the misdemeanor in count four. Because Appellant bases his argument here on his arguments overruled above, he essentially concedes the specific argument presented in assignment of error four would likewise fail. *See, e.g., State v. Williams*, 2024-Ohio-2307, ¶ 48-53 (3d Dist.) (after finding sufficient evidence on the importuning charge, the court likewise found sufficient evidence to prove the cell phone was used criminally in committing that offense); *State v. Williams*, 2018-Ohio-4612, ¶ 58 (8th Dist.) (sufficient evidence of possession of criminal tools where the defendant reiterated his prior arguments on the underlying offenses and claimed cell phones were not criminal tools for human trafficking offenses where the online ad was for "time and companionship" and not

for prostitution); *State v. Calhoun*, 2017-Ohio-8488, ¶ 54 (8th Dist.) (overruling the possession of criminal tools argument by noting the defendant merely incorporated the same arguments he made for the promoting prostitution offense).

{¶68} In any event, after viewing the evidence in the light most favorable to the state, we conclude some rational trier of fact could conclude beyond a reasonable doubt that Appellant possessed (or had under his control) the confiscated phone with purpose to use it criminally as required by R.C. 2923.24(A). He specifically intended to use the phone and did use it to arrange a sex for hire encounter with an adult and a child, communicating before and while he drove to the location and placing it under his seat before alighting from his vehicle for the encounter. *See* R.C. 2901.22(A) (defining purposely as including the "specific intention to cause a certain result"). Appellant had the phone under his control with purpose to use it criminally when he committed the first-degree misdemeanor engaging in prostitution, among other offenses discussed next.

{¶69} Furthermore, a rational fact-finder could conclude the circumstances indicate the device "was intended for use in the commission of a felony" as required for degree enhancement under R.C. 2923.24(C). Appellant used his cell phone with the purpose to commit a third-degree felony compelling prostitution (with a person believed to be a minor). The device was additionally intended for use as part of his attempt to commit unlawful sexual conduct with a minor, a fourth-degree felony. *See, e.g., State v. Koran*, 2022-Ohio-2410, ¶ 53 (8th Dist.) (after upholding convictions for attempted unlawful sexual conduct with a minor, importuning, and disseminating matter harmful to juveniles for exchanging sexual messages with an undercover law enforcement agent purporting to be 15 years old and appearing at the rendezvous point, the court found the defendant purposely used his phone to engage in criminal conduct). This assignment of error is overruled.

{¶70} For the foregoing reasons, Appellant's convictions are upheld, and the trial court's judgment is affirmed.


Waite, J., concurs.

Hanni, J., concurs.


Case No. 24 CO 0008

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**